IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. 16 C 5030 |
| v. | ) Hon. Virginia M. Kendall |
| MARIO BARBER | ) |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 2255, Petitioner Mario Barber moved to Vacate, Set Aside, or Correct Sentence based on two claims of ineffective assistance of counsel: (1) his appellate counsel was ineffective on direct appeal for failing to "challenge the procedural reasonableness" of his sentence; and (2) his trial counsel was ineffective at sentencing for failing to challenge the sentencing guideline used by the Court. For the reasons stated herein, Barber's Motion is denied.

## BACKGROUND

On July 22, 2008, Barber and two co-defendants met with an undercover special agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and agreed to rob cocaine from a narcotics stash house. *See United States v. Mahan*, 08 CR 720 Dkt. 176 at 3. On the day of the planned robbery, Barber arrived at a designated meeting spot with a firearm. (*Id.*) The undercover agent confirmed with each individual present that they were aware that the home was expected to contain twenty kilograms of cocaine, to which Barber did not express reservation. (*Id.*) On November 6, 2008, a federal grand jury returned a multi-count indictment against Mario Barber, alongside his three co-defendants, James McKenzie, Steven Stewart, and Tony Mahan. *See United States v. McKenzie*, 656 F.3d 688 (7th Cir. 2011); *see* Fed. R. Evid. 201(b);

1

*Indep. Trust Corp. v. Stewart Info. Serv,'s Corp.*, 665 F.3d 930, 942 (7th Cir. 2012) (holding that the district court did not err in taking judicial notice of indictment and plea agreement when reciting procedural history of case). In Count One, Barber was charged with conspiracy to possess with intent to distribute mixtures containing in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. § 846. (Dkt. 25 at 1.) In Count Two, Barber was charged with knowingly and intentionally possessing with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 2.) In Count Three, Barber was charged with knowingly possessing and carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(2). (*Id.* at 3.) Barber pleaded guilty to Count Three, the § 924(c) firearms count, and he stipulated to the drug distribution charge in his plea agreement; specifically, Barber stipulated "for purposes of computing his sentence under Guideline § 1B1.2" that he agreed to complete a planned armed robbery of a "drug stash house purported to contain cocaine" in violation of 21 U.S.C. §§841(a)(1) and 846. (Dkt. 176. at 3-4.)

Based on its review of the surveillance evidence, Probation concluded that Barber agreed to assist in the robbery of 20 to 30 kilograms of cocaine and recommended, along with the government, application of Guideline § 2D1.1, the Guideline applicable to a narcotics conspiracy. At sentencing, Barber disputed the base offense level, by challenging the amount of drugs at issue, but did not challenge the application of § 2D1.1. (Dkt. 250 at 10-28.) Ultimately, after hearing evidence and argument, the Court applied Guideline § 2D1.1, and based on its review of the surveillance evidence, overruled Barber's objection as to the amount of drugs at issue. (*Id.* at 28-29.) This calculation resulted in an offense level of 34, based upon an amount of fifteen to fifty kilograms of cocaine; specifically the Court ruled that Barber intended to rob the stash house of at least twenty kilograms of cocaine. (*Id.* at 28.) After applying Barber's

criminal history level and reducing his range for acceptance of responsibility, his advisory guideline range was 101 to 135 months plus a consecutive 60-month mandatory sentence for the gun count. (*Id.* at 36.)

The Court over-ruled the defense's objection made at the sentencing hearing regarding the amount of drugs contained in the conspiracy to distribute drugs that Barber stipulated to in his plea agreement and the Seventh Circuit affirmed the Court's calculation. *McKenzie*, 656 F.3d at 691. After concluding that the advisory range was 108-135 months plus another consecutive 60 months (therefore a range of 168 on the low end and 195 on the high end) and addressing each of the sentencing factors under 18 U.S.C. § 3553, the Court imposed a total sentence of 120 months – essentially varying downward to a 60 month sentence on the stipulated drug conduct followed by a mandatory 60 month consecutive sentence for the gun count, followed by a three-year period of supervised release. (Dkt. 250 at 50-51.) The Court justified the large variance downward by explaining that the seriousness of the crime was over-rated due to the government's complete creation of the drug quantity amount. (*Id.* at 47.)

Barber appealed his sentence, arguing that the Court erred in finding that the amount of cocaine involved in the planned robbery was at least twenty kilograms producing a base offense level of 34. *McKenzie*, 656 F.3d at 691. The Seventh Circuit denied Barber's appeal, finding that Barber could reasonably foresee that he was robbing twenty kilograms and affirmed his conviction and sentence. (*Id.*) *See also United States v. Cochran*, 955 F.2d 1116, 1124 (7th Cir. 1992) ("[a] defendant is responsible for the amount of drugs that he knew, or should reasonably have foreseen, was the object of the conspiracy."). The Seventh Circuit further credited the Court's analysis of the seriousness of the offense when affirming the Court's significant variance

3

from the guideline range. *McKenzie*, 656 F.3d at 691-92. On September 23, 2011, the Seventh Circuit entered final judgment. (Dkt. 266.)

On December 10, 2015, Barber petitioned this Court to reduce his sentence to 100 months from the 120 months pursuant to Amendment 782 which provided a new reduced guideline range of 87-108. (Dkt. 291.) On April 18, 2016, after reviewing his request and the sentence imposed, this Court denied his sentencing reduction request citing the fact that he had already received a much lower sentence than even the one that he would have received with the two-level difference in his advisory guideline range had Amendment 782 been applied. (Dkt. 305.) On April 26, 2016, Barber appealed the Court's denial of a further reduction in his sentence pursuant to Amendment 782 but his appeal was dismissed on August 9, 2016, for failure to prosecute. (Dkt. 306; Dkt. 319.)

After filing his appeal of this Court's denial of his 782 petition, Barber filed this petition to vacate his sentence under § 2255 on May 5, 2016 -- almost five years after his judgment was entered. Specifically, Barber claims that his appellate and trial lawyers were ineffective due to their failure to argue that gun Guideline § 2K2.4(b) should have been used to calculate his sentence, instead of the drug Guideline § 2D1.1. (Dkt. 1 at 6, 10.)

## **STANDARD OF REVIEW**

Under § 2255, a federal prisoner may move the district court that imposed his or her sentence to vacate it, set it aside, or correct it. *See* 28 U.S.C. § 2255. Such a motion seeks "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). In order for a federal prisoner to obtain relief under § 2255, "he must show that the district court sentenced him 'in violation of the Constitution or laws of

the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting 28 U.S.C. § 2255). Thus, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4 of the *Rules Governing Section 2255 Proceedings for the United States District Courts.*

## DISCUSSION

**I.     Barber's Motion is Barred by the Statute of Limitations**

Section 2255 expressly states that "[a] 1-year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255(f).  This limitation begins on the latest of several stated dates, the first being "the date on which the judgment of conviction becomes final[.]" 28 U.S.C. § 2255(f)(1).  The limitations period may also start on the date on which an impediment to making a motion is removed, the date on which a newly recognized right made retroactively applicable by the Supreme Court has been announced, or the date on which supporting facts could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(2)-(4).

Barber's judgment and conviction became final on September 23, 2011.  (Dkt. 266.)  He did not appeal to the Supreme Court.  Barber filed this 2255 petition on May 5, 2016, more than four years after his final conviction.  His motion was not filed within the 1-year period, and on its face, is time-barred under § 2255(f)(1).  Barber seeks to circumvent the one-year filing rule by framing his issue in terms of ineffective assistance of counsel which provides that motions can be filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Barber insists that on April 18, 2016, he was informed for the first time that his sentence was not

5

appealed on the grounds that he wished, which related to application of Guideline § 2K2.4(b), instead of Guideline § 2D1.1. Thus, Barber submits that April 18, 2016, was the date on which the facts supporting his claims were discoverable, making his claim timely under § 2255(f)(4).

In order for Barber to avail himself of the timeline provided by Section (f)(4), however, the relevant "fact" must not have been discoverable through the exercise of due diligence within the 1-year limitations period of Section (f)(1). *Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013). In order to determine the accurate limitations timeline, the important question is "when [petitioner] learned about the new 'fact' rather than when he recognized its legal significance." *Wilson v. United States*, 413 F.3d 685, 687 (7th Cir. 2005). Here, Barber concedes that prior to sentencing he asked his trial counsel to argue that his sentence should have been calculated pursuant to §2K2.4(b), the guideline governing the use of a firearm rather than § 2D1.1, the drug offense guideline. (Dkt. 1 at 11.) Barber also asked his appellate counsel to appeal his sentence on the grounds that the district court erred in using guideline § 2D1.1. (*Id.* at 7.) Thus, there is no question that he learned about the facts supporting his claim regarding his trial counsel prior to his sentencing on August 18, 2010, and about his claims against his appellate counsel no later than September 1, 2011, the date the Seventh Circuit rejected his appeal and wrote a thorough opinion explaining why the calculation was appropriate *See McKenzie*, 656 F.3d 668. His Petition was filed almost five years thereafter. Barber's long standing awareness of the fact which he now uses as the basis for his petition renders said motion untimely under § (f)(4). *See, e.g., Wilson*, 413 F.3d at 686; *Jackson v. United States*, 463 F.3d 635, 640 (7th Cir. 2006).

**II.     Barber has Not Shown that he was Denied the Effective Assistance of Counsel**

Even if the Court were to find that Barber's motion is timely under § 2255(f)(4), Barber has failed to show that he was denied the effective assistance of counsel. In judging Petitioner's claim of ineffective assistance of counsel, the initial inquiry is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Review of an attorney's performance "must be highly deferential." *Strickland*, 466 U.S. at 689.

This is a challenging, retrospective determination, and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." so as to provide a fair assessment. *Strickland*, 466 U.S. at 689. Ultimately, Petitioner is tasked with showing "that his counsel's service did not meet an objective standard of reasonableness and that there is a fair probability that but for his attorney's ineffectiveness, the result of the trial would have been different." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). In short, Petitioner must show "both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688). Here, he is unable to show either.

Barber argues that both his trial and appellate counsel provided him with ineffective assistance. Specifically, he argues that his trial counsel failed to argue that his sentencing range should not have been calculated using the drug offense provision, § 2D1.1, as his guilty plea only pertained to knowingly carrying and possessing a firearm under 18 U.S.C. § 924(c). Instead, he argues that his recommended sentencing range should have been governed by § 2K2.4, which covers only the use of a firearm.

Barber has two fundamental misunderstandings regarding his original sentence. First, although he pleaded guilty to the gun charge pursuant to 18 U.S.C. § 924(c), he also stipulated to the drug distribution charge. (Dkt. 176.) Of course this makes complete sense because by its very elements, the § 924(c) charge does not stand alone. The count to which Barber pleaded guilty stated that the guns were carried in furtherance of, and relation to, a drug trafficking crime— specifically the drug trafficking alleged in Count Two of the Indictment. (Dkt. 25.) Barber's sentence for the § 924(c) charge is a mandatory sentence of 60 months incarceration which must be consecutive to the underlying charge. *See* 18 U.S.C. § 924(c)(1)(D) ("[N]o term of imprisonment under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime drug which the firearm was used, carried, or possessed."). As such, although Barber received a total sentence of 120 months, he only received a sentence of 60 months on the drug trafficking – an amazingly significant variance from the guideline range *on the drugs alone* which was calculated as being an advisory range of 108-135 months. The Judgment and Commitment Order makes this abundantly clear. (Dkt. 241.) Therefore, the Court gave Barber a 55% variance downward from the upper range of the advisory guideline range. Even if it were possible to show that his counsel failed to raise his complaints about the drug trafficking guideline application –- which he clearly cannot since it was raised at his sentencing and in his appeal brief -- it is impossible for Barber to show any ineffectiveness of counsel under the circumstances because there is clearly no prejudice that he suffered from such a significant variance downward from the range. *Strickland*, 466 U.S. at 694.

Barber's second misunderstanding about his sentence is that he believes he should somehow receive a gun guideline range (Advisory Guideline § 2K2.4) for his § 924(c) charge

and not a drug guideline range (Advisory Guideline § 2D2.1). This is wrong for two reasons. First, as stated above, by pleading guilty to the § 924(c) charge, Barber pleaded guilty to possessing the weapons in furtherance of the drug trafficking crime set forth in Count Two of the Indictment which was a drug trafficking crime. (Dkt. 25; Dkt 176.) Second, by stipulating to the drug trafficking crime as alleged in Count Two of the Indictment, he admitted to the conduct that formed the basis for the Court's calculation and the Court is required to take into account the stipulated conduct when calculating the advisory guideline range. Guideline § 1B1.2(c). Sentencing Guideline § 1B1.2(c) states that "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." Guideline § 1B1.2(c). Thus, for purposes of sentencing, the Court understands the plea agreement as establishing the commission of both the § 924(c) violation to which Barber pled guilty, as well as the narcotics conspiracy charge to which he stipulated. The appropriate guideline for these offenses is therefore not § 2K2.4, which covers only the use of a firearm, but rather § 2D1.1, which covers a narcotics conspiracy.

The alleged omission by counsel (failing to raise a challenge to the applicable sentencing guidelines) was within "the wide range of professional competent assistance." *Strickland*, 466 U.S. at 690. In fact, any such challenge would have directly contradicted the express text of the sentencing guidelines. The decision by counsel to avoid this fruitless contradiction does not reflect incompetence. Nor could Barber ever show that he was prejudiced by the omission. Had counsel raised a challenge to the applicable sentencing guidelines at trial or appeal, it would certainly have failed. Therefore, the Court finds no basis to conclude that the result of Barber's sentence would have been different had his trial or appellate counsel honored his request.

## **CONCLUSION**

For the reasons stated herein, Barber's Motion to Vacate, Set Aside, or Correct Sentence is denied.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: June 16, 2017